IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02468-WYD-MEH

MARCELINO TRUJILLO,

    Plaintiff,

v.

BURLINGTON NORTHERN SANTA FE RAILROAD,

    Defendant.
_____

**RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

Pending before the Court is Defendant's Motion for Summary Judgment [filed July 20, 2010; docket #13]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation. The matter is briefed, and the Court finds that oral argument is unnecessary in the determination of the motion. The Court recommends that, for the following reasons, the motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

# BACKGROUND

I.  **Statement of Material Facts**

The following facts are set forth in Defendant's motion and, in many respects, supported by Plaintiff's deposition testimony. Unless otherwise specified, these facts are unrebutted by the Plaintiff.

Plaintiff began working for Burlington Northern Santa Fe Railroad ("BNSF") as a conductor in 1997. In 2002, Plaintiff completed training to become an engineer with BNSF.

On an unspecified date, Plaintiff was written up for violating BNSF's policy prohibiting him from being unavailable for scheduling on more than one weekday in a month. According to his deposition testimony, Plaintiff believes this write-up constituted race discrimination because other Caucasian employees were not written up for being unavailable for scheduling on more than two weekdays in a month. Plaintiff complained to his union representative about the write-up, but does not know whether he specifically alleged that the differential treatment was due to his race. Plaintiff did not complain to anyone in BNSF management that he believed he was being discriminated against as a result of this write-up. The write-up was handled pursuant to BNSF's Alternative Handling Agreement with the union. Although Plaintiff believes he received probation of one year as a sanction for this write-up, no record of disciplinary action appears in Plaintiff's personnel file.

In May 2007, Plaintiff was written up for violating BNSF's policy prohibiting him from being unavailable for scheduling on more than the allowable amount of weekend days, when he took off the Friday before a long weekend. As a result of this write-up, Plaintiff received a ten day "record suspension." A record suspension is a suspension in name only, and Plaintiff was not actually

removed from duty and did not lose any pay.[2] Plaintiff's union appealed the write-up on behalf of the Plaintiff and the write-up was reversed. The ten-day record suspension was expunged from Plaintiff's record.

In July 2007, BNSF investigated Plaintiff's failure to perform properly a locomotive inspection. After Plaintiff complained to his union, the investigation was dismissed and BNSF did not issue a sanction. Plaintiff told his union representative that he believed the investigation constituted race discrimination, but he does not know whether the union representative raised the issue with BNSF.

In August 2007, a supervisor accused Plaintiff of abandoning his job when he did not respond to a call to go to work. However, Plaintiff states he submitted a doctor's note stating that he was not supposed to walk on the "slag," or the rocks on the railroad track, until after he had surgery on his foot. Plaintiff's supervisor told Plaintiff that he had not submitted the proper paperwork for medical leave. Nevertheless, Plaintiff was upset that other people who had missed calls were not accused of abandoning their jobs. Plaintiff does not assert that BNSF disciplined him as a result of his supervisor's accusation of job abandonment, nor is there a record of discipline in his personnel file.

Following the accusation of job abandonment, Plaintiff called BNSF's human resources department in Denver and left two messages. Plaintiff does not remember what he said in those messages. No one from human resources returned these calls. Plaintiff acknowledges that unless he mentioned race discrimination in his messages to human resources in 2007, no one at BNSF other than his union representative would have known that Plaintiff believed he had suffered

---

[2] The deposition testimony reveals a dispute as to this fact. The Court addresses the fact *infra* in Section II (A).

discrimination.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 16, 2007, alleging discrimination based on national origin and retaliation. Plaintiff's charge asserts that his supervisor harassed him and held him to different standards than non-Hispanic co-workers. In addition, the charge asserts that after complaining of discriminatory treatment, he received numerous verbal and written reprimands, and his supervisor attempted to terminate his employment at least three times. Finally, the charge asserts that two other Hispanic employees in his work group quit or transferred because of his supervisor's disparate treatment.

Plaintiff is not aware of any adverse job actions suffered by either of these two Hispanic employees during the time Plaintiff worked with them at BNSF. One of these two Hispanic employees, Dominick Romero, left BNSF because he obtained a job with another company, and because of the unpredictabilty of the work hours and time away from home. The other Hispanic employee, Mario Cabrera, transferred to BNSF's Denver office to be closer to his grandchildren.

On October 6, 2008, Plaintiff was the engineer on a BNSF train that was involved in a collision with another train owned by Union Pacific. Plaintiff was engineering the train when it approached a sharp corner where he was required to reduce his speed. Because the Plaintiff thought he was two curves further back from where he actually was, he failed to reduce to the required speed. The collision caused the Union Pacific train to derail. The accident resulted in damages of $260,500.00 to the trains and track, plus contractor expenses of $1,500.00 per hour for clearing the track.

Plaintiff acknowledges that the accident was his fault and accepts full responsibility for it.

BNSF conducted a formal investigation of the accident. At the investigation, Plaintiff was represented by a union representative. Following the investigation, Plaintiff was terminated for failure to comply with restricted speed requirements resulting in an impact collision and subsequent derailment. Christian Eggleston, the conductor of the train involved in the accident who is Caucasian, was also terminated following the investigation.

Plaintiff believes that he should not have been terminated for the collision because he thinks other BNSF employees had previously violated the company's restricted speed rules without being terminated. However, Plaintiff has no direct knowledge of any other incident in which an engineer was not terminated for causing a derailment resulting in significant damage. He concedes that his belief that two other BNSF employees had previously violated the company's restricted speed rules and caused damage is based on conversations he overheard.

Plaintiff did not file another Charge of Discrimination nor revise his existing charge to include his termination. Plaintiff is aware of non-Hispanic employees having been disciplined for various violations while he was working for BNSF. In the year prior to his Charge of Discrimination, no Hispanic employees other than Plaintiff were disciplined for rules violations, but seven Caucasian employees were disciplined for rules violations.

Plaintiff acknowledges that he has no direct evidence of race discrimination. The BNSF employees who made the decision to terminate Plaintiff did not know about the Plaintiff's Charge of Discrimination.

## II.     Procedural History

Plaintiff initiated his *pro se* action on October 20, 2009, alleging generally that Defendant discriminated against him in "demotion/discharge" because of race and national origin. [Complaint

5

at ¶¶ 9, 10, docket # 1.] However, Plaintiff attached a copy of his EEOC Charge of Discrimination to the Complaint, which reflects charges of harassment and differential treatment based upon national origin and of retaliation against Defendant. [*Id*. at 3.] Plaintiff makes no other allegations in the Complaint and specifies no request for relief. [*Id*. at 5.]

In the present motion, Defendant seeks summary judgment claiming that (1) Plaintiff cannot establish a prima facie case of discrimination because he describes no adverse action occurring prior to his termination, (2) Plaintiff did not exhaust his administrative remedies respecting his termination, which in any event, does not support his discrimination claim, and (3) Plaintiff offers no evidence to support his retaliation claim. [Docket #13.]

The Plaintiff filed a response to the motion on August 19, 2010. [*See* docket # 16.] Plaintiff asks the Court to deny summary judgment because he was "fearful" and "felt discriminated against." [*Id*.] He claims that he "came [to the court] with documented pages written by the Defendant, proving the Plaintiffs [sic] case." [*Id*.] Plaintiff further states that after his termination the Defendant continued its discrimination by denying him the normal arbitration procedures afforded to all other union employees. [*Id*.]

Defendant filed a reply brief in support of its motion on August 23, 2010. [Docket #18.] Defendant argues that Plaintiff (1) has not established a prima facie case of discrimination under Title VII, (2) does not provide evidence that he filed an internal complaint of discrimination with BNSF for his retaliation claim, and (3) does not address the arguments set forth in the motion. [*Id*.]

**STANDARD OF REVIEW**

**I.      Summary Judgment Pursuant to Fed. R. Civ. P. 56**

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v.*

*South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and ... if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II. Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

Even viewing the evidence in the light most favorable to the Plaintiff, this Court finds that he fails to show a genuine issue of material fact allowing this case to proceed to trial.

## I. Plaintiff's Challenge

Plaintiff responds to the present motion stating that he was fearful, he felt discriminated against, he filed "charges" a year in advance of his termination, and Defendant denied him post-termination arbitration procedures. Moreover, Plaintiff asserts that he provided the court with "documented pages written by the Defendant, proving the Plaintiffs [sic] case"; however, other than the Complaint and the one-page response brief, the Plaintiff has provided no other documents to the

Court.

To defeat a motion for summary judgment, the nonmovant must "respond with specific facts showing a genuine factual issue for trial." Fed. R. Civ. P. 56(e); *Hysten*, 296 F.3d at 1177. Plaintiff's subjective beliefs concerning his feelings of fear and discrimination are insufficient to defeat a summary judgment motion. *Roemer v. Public Serv. Co. of Colorado*, 911 F. Supp. 464, 469 (D. Colo. 1996) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992)). Moreover, his allegation regarding Defendant's post-termination conduct was not raised in the Complaint and the Plaintiff has filed no motion to amend; therefore, to the extent that Plaintiff seeks to amend his Complaint raising such claim, he may not do so in response to a pending motion. *See* D.C. Colo. LCivR 7.1C. Otherwise, the Court finds such unsupported statement to be unrelated to the pending motion and, thus, disregards it. Consequently, the Court recommends that the District Court find Plaintiff's response insufficient to demonstrate genuine issues of material fact for trial.

## II. Defendant's Evidence

Even if the Plaintiff fails to present evidence demonstrating an issue of material fact in response to the summary judgment motion, the Defendant still bears the burden of demonstrating that it is entitled to summary judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). "If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id*. (internal quotation marks and citation omitted.) "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's

9

submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id*.

In the present motion, Defendant claims that Plaintiff (1) cannot establish a prima facie case of discrimination because he describes no adverse action occurring prior to his termination, (2) did not exhaust his administrative remedies respecting his termination, which in any event, does not support his discrimination claim, and (3) offers no evidence to support his retaliation claim.

A. Race Discrimination

Defendant claims that Plaintiff cannot establish a prima facie case of discrimination because he describes no adverse action occurring prior to his termination. A prima facie case of race discrimination must consist of evidence that: (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *Equal Employment Opportunity Comm'n v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

There is no dispute in this case that the Plaintiff is a member of a protected class. Thus, he has met the first prong of his prima facie case.

Plaintiff cites five occasions of possible adverse employment actions pursuant to Title VII[3]: (a) the write-up for violating the weekday attendance policy, (b) the record suspension for violating

---

[3]In his Charge of Discrimination, the Plaintiff also identifies a claim of "harassment." A plaintiff may support a Title VII claim of harassment by showing conduct so severe or pervasive as to create an objectively hostile or abusive work environment. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993); *see also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) ("A plaintiff cannot meet [his] burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.") (citations and internal quotation marks omitted). Here, the Plaintiff alleges no facts that support a harassment claim under Title VII; therefore, to the extent such claim exists in this case, the Court recommends that the District Court grant summary judgment in favor of the Defendant.

10

the weekend attendance policy, (c) the investigation into improper locomotive inspection, (d) the accusation of job abandonment, and (e) the termination. An adverse employment action is, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). A written warning can be an adverse employment action only if it effects a significant change in employment status. *Haynes v. Level 3 Communs., LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006).

In determining whether a movant is entitled to summary judgment the Court examines the evidence produced in support of the motion. *Murray*, 312 F.3d at 1200. As set forth above, the Plaintiff, in his response, does not rebut the Defendant's statement of material facts. However, the Defendant still bears the burden of demonstrating that it is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. An examination of the Defendant's Exhibit A-2, "Deposition of Marcellino Trujillo," reveals that the Defendant has shown there are no issues of material fact demonstrating that the following conduct does not constitute "adverse employment actions" under Title VII: (a) the write-up for violating the weekday attendance policy, (c) the investigation into improper locomotive inspection, and (d) the accusation of job abandonment. It is undisputed that none of these instances were, or led to, a significant change in employment status. Thus, under the prevailing law, the Plaintiff cannot show that he suffered an adverse employment action on these three occasions.

However, the Plaintiff's deposition reveals that there may be a disputed fact with respect to (b) the record suspension for violating the weekend attendance policy. The Defendant argues that "Plaintiff initially received only a record suspension for this infraction, during which he was not actually removed from the job and did not lose any pay. [...] Further, even this record suspension

11

was rescinded and expunged from Plaintiff's record as a result of his union's intervention." [Docket #13 at 11.] However, the Plaintiff testified that he was suspended for ten days in which time he may have lost wages. [Docket # 13-2 at 18:10-19; 20:5-11; 21:1-5.] The suspension later became a record suspension, which is a suspension in name only, [*id*. at 20:12-21] and was eventually expunged [*id*. at 112:12-15]. Simply because the suspension was later termed a "record suspension" does not mean that the Plaintiff was eventually compensated for the wages he may have lost during the time he was suspended.

However, even if there exists a disputed fact as to whether the record suspension constitutes an adverse employment action, the Defendant nonetheless succeeds as a matter of law. The Plaintiff has provided no evidence demonstrating that the challenged action took place under circumstances giving rise to an inference of discrimination. In his deposition, the Plaintiff states, "I don't have any facts or anything" to show that the record suspension was based upon race discrimination. [*Id*. at 98:1-9.] Thus, the Plaintiff cannot support a claim that this occasion demonstrates a prima facie case of race discrimination.

The Plaintiff also alleges that his termination is a discriminatory adverse employment action *See Ellerth*, 524 U.S. at 761 (a termination of employment is an adverse employment action under Title VII). However, Plaintiff is barred from bringing this claim because it is undisputed that he failed to exhaust his required administrative remedies. To bring a Title VII lawsuit, the plaintiff must first timely file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Moreover, a plaintiff must file a charge of discrimination for each discrete act of discrimination. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). A termination is a discrete action. *Id*. The Plaintiff did not file an EEOC charge of discrimination for his termination of employment and, therefore, he

has not exhausted his administrative remedies as required by Title VII.

Even if it were not barred from consideration, the Plaintiff cannot establish the challenged termination took place under circumstances giving rise to an inference of discrimination. Defendant argues that Plaintiff was fired because he ran his train into the back of another train, derailing the train and causing hundreds of thousands of dollars in damages. In his deposition, Plaintiff asserts that two white engineers had caused trains to derail, but were not terminated. [Docket #13-2 at 194:11-18, 196:18- 199:17.] However, Plaintiff admits that he did not have personal knowledge of those incidents and that he heard about them from other people. [*Id*. at 196:24-199:17.] The Court may consider only admissible evidence in reviewing a motion for summary judgment. *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998). Hearsay testimony is not admissible evidence. *Id*.

Defendant has demonstrated there exist no genuine disputes as to material fact with respect to Plaintiff's discrimination claim. Therefore, the Court recommends that the District Court grant Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claim.

B.     Retaliation Claim

Under Title VII, where there is no direct evidence of retaliation, the courts apply a burden-shifting framework. *Annett v. Univ. of Kan*., 371 F.3d 1233, 1237 (10th Cir. 2004). First, a plaintiff must present a prima facie case of retaliation. *Id*. To do so, the Plaintiff must show that: (1) he engaged in a protected activity under Title VII; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse action. *Id.*; *see also Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

In his Charge of Discrimination, Plaintiff alleges, "I have complained of the discriminatory

13

treatment and since then have received numerous verbal and written reprimands. Within the last year, my supervisor has initiated at least 3 attempts to terminate my employment (the latest occurring in August of 2007) to retaliate against me for complaining." [Docket #1 at 3.]

Complaining is a protected activity under Title VII only when the employee complains of discrimination to his employer. *Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (concluding that the absence of a reference to unlawful discrimination precludes a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that an employee, at least in part, is engaging in protected opposition.) In his deposition, Plaintiff identified four instances of protected conduct. The first instance is Plaintiff's complaint to his union representative, but not to anyone at BNSF, about the write-up for violating the weekday attendance policy. [Docket #13 at 3.] Plaintiff does not remember whether he complained that the write-up was based upon race discrimination. [*Id.*] Because the Plaintiff did not complain to his employer, and because he cannot state that he complained of discrimination, the Court finds there is no genuine issue of fact demonstrating that Plaintiff may have engaged in a protected activity.

The second instance is identified as Plaintiff's complaint to the union about the investigation into improper locomotive inspection. [*Id.* at 4.] Plaintiff complained to his union representative that he believed the investigation constituted race discrimination, but he does not know whether the union representative ever told BNSF. [*Id.*] Because Plaintiff has not shown that he complained to his employer, the Court finds there is no genuine issue of fact demonstrating that Plaintiff may have engaged in a protected activity.

The third instance is identified as Plaintiff's two telephone messages to BNSF's human resources department. [*Id.* at 5.] As stated above, the Plaintiff does not recall the content of the

14

messages. [*Id*.] Again, because Plaintiff cannot state that he complained of discrimination in the messages, there is no genuine issue of fact demonstrating that Plaintiff may have engaged in a protected activity.

The fourth instance is Plaintiff's filing of his EEOC Charge of Discrimination. [*Id*.] Defendant does not dispute that filing a charge of discrimination is a protected activity. [*Id*. at 17.] However, the Plaintiff fails to meet the third prong that there is a causal connection between the protected activity and any adverse action. According to the unrebutted facts, the only adverse action taken after Plaintiff filed the Charge of Discrimination on September 16, 2007 was his termination. [*Id*. at 18.] The October 2008 termination did not occur until more than a year after the charge was filed. The Plaintiff identifies no other incidents during this period that might raise an inference of discrimination. Thus, the Court finds that a 13-month period between the protected activity and the adverse action, without more, fails to demonstrate the causal connection necessary to demonstrate a prima facie case of retaliation under Title VII. *See Meiners v. Univ. of Kan*., 359 F.3d 1222, 1231 (10th Cir. 2004) (unless an adverse action is "very closely connected in time" to the protected activity, a plaintiff must produce evidence beyond mere temporal proximity to establish causation); *see also Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003) (five-month gap between protected activity and adverse action ordinarily too great a time to lapse to support inference of causation).

Defendant has demonstrated that no dispute exists as to the material facts related to Plaintiff's retaliation claim. Thus, this Court recommends that the District Court find the Defendant is entitled to summary judgement on Plaintiff's Title VII retaliation claim.

## CONCLUSION

Here, the Plaintiff has failed to raise any genuine issues of material fact establishing the essential elements for claims of Title VII race discrimination and retaliation against Defendant. Defendant has demonstrated that it is entitled to summary judgment on Plaintiff's claims. Accordingly, the Court RECOMMENDS that Defendant's Motion for Summary Judgment [filed July 20, 2010; docket #13] be GRANTED and Plaintiff's claims be dismissed with prejudice.

Dated at Denver, Colorado, this 19th day of October, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge